Mr. Karnes, you may proceed for the appellant argument not to exceed 30 minutes per side. Thank you, your honors. May it please the court, my name is Jacob Karnes. I'm here today on behalf of Walter Raglin. With the court's permission, I'll reserve five minutes for rebuttal. Very well. There are two issues I'd like to focus on today. The first is the defective assistance of counsel at the culpability phase of trial based on counsel's decision to repeatedly concede that Mr. Raglin was guilty of it. Counsel, can you get your voice up? Is there not a microphone there the way they're usually used? You can raise the whole thing. That's right, the other ones, they have the mic. That probably helped. Thank you, yeah. Is that better? Yeah, a little bit of trial voice is good. It's a big room. The first issue I'd like to discuss is trial counsel's decision to repeatedly concede that Mr. Raglin was guilty of aggravated murder and then present conflicting arguments to the jury in closing. The second issue I'd like to talk about is the claim under Beck v. Alabama. Very well. Before this trial even started, Mr. Raglin's attorneys repeatedly told the members of the veneer that the case would, in all likelihood, proceed to the mitigation phase of trial. During opening arguments, they told the jury that there was no dispute that a murder had been committed, that it would be incumbent upon the jury to find that it had been committed purposefully and, again, that the case would, in all likelihood, proceed to the mitigation phase. They made these statements knowing that the jury was going to hear Mr. Raglin's confession in which he made clear that he did not intend to kill Mr. Boehne, and in doing so, they essentially invited the jury to conclude that their own client was a liar. This was clearly deficient performance, and whether considered in isolation or in conjunction with the other instances of deficient performance at the pre-trial and culpability phase of the case, Mr. Raglin would have obtained a more favorable verdict. Can you elaborate on that last point? The reasonable probability? Why do you think that's true? Given the facts of the case, it was late at night, dark outside, Mr. Raglin had been drinking and consuming alcohol for several hours before the incident. As he said in his confession, he was not sure exactly what part of Mr. Boehne's body he had struck when he fired the shot. He did not know that Mr. Boehne had passed away until he saw it on the news. I'm sorry, and you should correct me if I'm wrong, I thought it was a few feet away from his neck that he pointed the gun. The expert testimony at trial was that the shot was fired from at least three feet away. In closing, the prosecution said it was approximately six feet. This wasn't a point-blank shot. Okay. Go ahead. No, you. Your argument is the outcome would have been different in spite of the confession because of the intent. Not that they wouldn't find a killing, but that it wouldn't be intentional. Yes, Your Honor, correct. So it's on the verdict. Let me ask you, so defense counsel, one way to look at it is your way, which is perfectly fair. Another way to look at it is defense counsel made a tactical decision, and the tactic was he's going to get convicted, and I'm going to avoid the death penalty in this way. It seems to me what you're really arguing, although I know you're not, is that he made a bad tactical decision in choosing to contest the penalty ultimately versus the underlying intent. There would not have been anything wrong with conceding at the outset of trial that Mr. Raglin committed a homicide. The problem is that they conceded from the outset that he committed aggravated murder even though they had a very strong reasonable doubt argument available to them. Well, I mean, it's interesting. I mean, obviously we're talking about the prejudice prong now, and the merits of that part of the claim really kind of mirror those of the Beck issue. Fair? Yes. And so on the other side, I guess one could argue in terms of, well, there's not a reasonable probability that the outcome changes at the guilt phase is evidence that the gun didn't have a hair trigger. I mean, sort of the pretty powerful fact that if you, as a general matter, I'm not saying a legal presumption, but I think the way jurors are likely to think is that if you point a and actually look that person in the eye, which is what Raglin said, and then pull the trigger, that most people are going to think you mean to kill the person. You know, it's not like an officer is maybe trying to disable somebody. And so, I mean, he's got some very stiff headwinds, arguably. What would you say in response to that? Under the prejudice component of Strickland, there is an assumption that absent the errors of counsel and in an otherwise fair trial, that the jury would have followed their instructions conscientiously and reasonably, meaning that in Mr. Raglin's case, they would have followed the instructions to the letter. Sure. And let's say they get a manslaughter instruction. I mean, what instructions are you alluding to? I'm alluding to the instructions without, the instructions as given at trial. If counsel had not been deficient, there's an assumption that the jury would have followed their instructions to the letter, and if they had a reasonable doubt, would have acquitted Mr. Raglin of aggravated murder. I'm sorry. No, no. I don't mean to interrupt you. I would have acquitted Mr. Raglin of aggravated murder, even though doing so would mean that he would not have any liability at all for the homicide that he committed. So I guess what I'm suggesting in response is that one might conclude that the evidence here of his intent was actually quite strong, and that there was not a reasonable probability that the jury would have found him, that, I'm trying to figure out how to count this in terms of, there's not a reasonable probability that the jury would have found other than it did as to intent. I mean, what about the fact that, you know, he looks him in the eye, and almost point blank chooses to pull the trigger and shoot him. After the guy won't answer his question about whether it was manual or automatic. There's no dispute that he committed a homicide. I'm not contesting that. What the jury could have found very easily is that Mr. Raglin deliberately shot him without intending to kill him. How would they very easily, I mean, that's a very sort of counterintuitive sequence. Especially if you point the gun at someone after the sequence of events and pull the trigger. It's between 1 and 2 o'clock in the morning, it would have been very dark outside, Mr. Raglin, he'd been drinking and using marijuana for several hours. But that, I mean, you're not claiming intoxication, you're claiming lack of intent. Well, I'm not suggesting that his intoxication relates to his intent as far as committing a homicide goes. It relates to his intent as to where he intended to strike Mr. Bainey when he shot at him. And from Mr. Raglin's confession, he didn't know where. What if the counsel was hedging? Like, counsel says that, but then he later says, look, it's incumbent on the government to prove this stuff beyond a reasonable doubt. And as you heard from him, he said something, right, that as you heard in the confession, whatever you just said, he said something to that effect, I recall. And there would not have been anything wrong at all with counsel conceding at the outset Mr. Raglin committed a homicide, he committed a crime, he killed someone. The issue is that they conceded from the outset that Mr. Raglin purposefully killed this person. So this claim was defaulted, right? Yes, it was. Okay, so we have to go through appellate and effective assistance of counsel. Yes, your honor. And I mean, the appellate counsel raised, I mean, it was like, what, 20 odd issues or something? They raised a large number of issues, yes. Some of which, you know, are substantial, some of which we have before us again today. I mean, our court has an opinion that opens with the line that when an appellant comes to us with nine reasons to reverse the district court, that usually means there are none. I mean, and it goes to the credibility of appellate counsel. You know, a lawyer's credibility is at issue with really every argument the lawyer makes. And so why couldn't a reasonable lawyer make a tactical decision, perhaps given the strength of the evidence of intent, to focus on other arguments? In non-capital cases, that would be fine. In capital cases, the prevailing professional norms are very clear to raise all available claims. Well, okay. I will say, I don't accept the idea that we're sort of just going to import the ABA standards and graph those onto the Sixth Amendment. So I mean, setting aside sort of prevailing norms, just in terms of reasoning about strategy in this particular case, why couldn't a lawyer conclude that I ought to focus on some other things because there might have been pretty strong evidence of intent? This was a very striking issue that stands out. I mean, looking at the war deer and the opening statements. It is a remarkable aspect of the trial. Yes. I mean, that's a fair point that you make. And compared to, as the Ohio Supreme Court noted, some of the other claims that appellate counsel raised were clearly foreclosed by existing precedent. For example, the death penalty is unconstitutional. That's not one anyone is going to win any time soon. And that was the case at the time of Mr. Ragland's trial. Yeah, well, I mean, you never know with that. I mean, the Supreme Court kind of went back and forth. So that one, you can think, well, maybe they'll swing back again. Certainly, it's possible. And one point that I did want to make about ineffective assistance of appellate counsel, we've also raised a freestanding claim. And in that context, 2254D is applicable. To the extent that we've raised it as cause to excuse a procedural default, 2254D doesn't apply to that. And this court's review is completely de novo, as is the underlying claim of ineffective assistance of trial counsel, because there's no state court decision on the merits. I mean, my recollection is we have a published opinion to that effect. It's Hall v. Vassbinder and Joseph v. Coyle. That seems like a very strange decision, but I get it if it's a public. So, I mean, we defer to this exact same determination for this purpose, but we review it de novo over here. I think the reasoning of it is that by its own terms, 2254D limits the authority of the federal courts to grant a writ of habeas corpus. It doesn't say anything at all about excusing a procedural default. And when a default is excused, that doesn't necessarily lead to the writ being granted. Yeah. Okay. Well, it's a published case, so, you know, anyway, I think we're not going to revisit that probably. If there are no further questions on this claim, I can move on to the Beck claim. Sure. The Beck v. Alabama claim, this one was denied on the merits in the Ohio Supreme Court. There's no dispute that it's been preserved for federal review. And as with the ineffective assistance of counsel claim, it relates very much to Mr. Raglin's intent at the time of the homicide. The Ohio Supreme Court denied relief on the ground that under any reasonable view of the evidence, Mr. Raglin acted purposefully. That's really no different than saying that no reasonable juror could have found that he didn't act purposefully. And that's simply not a defensible ruling. Given Mr. Raglin's statements in his confession, Officer Argo testified that he believed Mr. Raglin was being truthful in his confession. Presumably he wasn't picking and choosing between the different things. That was a general statement as opposed to specific to this particular part of his confession? It was on cross-examination. Defense counsel asked him, do you believe Mr. Raglin was being cooperative and truthful in his confession? He answered yes. He was talking about his confession generally. In other words, he wasn't saying he thought he was being truthful with respect to this particular point? Correct. Okay. It was just a general statement? Yeah. Okay. He was being honest. I want to be sure when you said that he could have found that he didn't act purposefully. By that you mean with the specific purpose of killing as opposed to with the specific purpose of shooting where the gun was aimed? Yes, your honor. A reasonable juror could have found that Mr. Raglin did not specifically intend to kill Mr. Bainey. He deliberately shot him without intending to kill him. I guess it's sort of a rerun of the conversation we just had. It is. It's funny how sometimes one part of the issue is common to many issues. One point that I would like to make is that I think it's important for the ineffective assistance of counsel claim and the bet claim to be considered completely in isolation from each other because the legal standards applicable to each one each make an assumption about the way that jurors behave. As I said earlier in the context... Explain to me. Can you... I'm sorry. Let me give you the flip side of that, which I think is from your perspective, but maybe I'm completely missing something and you should tell me, which is counsel was so ineffective, however you want to say it, so deficient, whatever, that it even led the judge not to give the instruction they wanted because counsel himself had said this. And so why isn't your argument that, boy, you should consider the judge's determination when viewing the ineffective assistance of claim and not in isolation? I think it's entirely possible that had they not made these statements, they would have got the involuntary manslaughter. So then why don't you want us to consider... Why do you want us to consider... Now explain to me because I didn't understand that. The two different legal standards each make a different assumption about the ways that juries behave. The ineffective assistance of counsel assumes that absent the errors of counsel and with an otherwise fair trial, the jury would have followed their instructions to the letter. The bet claim assumes that it's simply not reasonable to expect the jury to do that. I completely agree that had they not... Now I understand. You've explained. I'm sorry to have missed that. Well, he's quicker than I am. Can you explain to me again that point? I was writing something else in my own defense, but anyway, go ahead. So each of these claims applies a different legal standard and each standard requires a different assumption about the way that juries behave. Under the ineffective assistance of counsel claim, there's an assumption that had counsel not committed these errors, the jury would have acted impartially and conscientiously and would have followed their instructions to the letter. As I said earlier, if they'd done... And therefore, what would have happened? In Mr. Ragland's case, if they'd had a reasonable doubt, they would have acquitted him of aggravated murder even though that doing so would have left Mr. Ragland without any... That's what the and therefore. In the second one, you say that they wouldn't have followed their instructions. Correct. The decision that recognizes that it's not reasonable to expect that of a jury in circumstances like this where... You can't win on both arguments, but you're happy to win on either argument. Certainly. Right. I get it. Okay. That's a good answer. That's a very good point. It is. Okay. One other issue I'd like to address, the warden has raised a new jurisdictional argument in their brief based on a Supreme Court case called White v. New Hampshire. It's very clear to me that that case does not stand for the proposition of law that they think that it stands for. The White case said that it was a case where there was a motion for attorney's fees filed after trial. The issue was whether that qualified as a Rule 59 motion that would be subject to the limitations period. The Supreme Court said, no, this is something that's completely collateral. It's not a Rule 59 motion. Counsel for the warden have taken an isolated quote from that decision and have tried to use it for the proposition that a Rule 59 motion can only be directed at the substantive merits of a claim in the case. It's clear to me that the decision doesn't stand for that. Okay. That's concise. I've got about a minute and a half left. So those are the two, you've raised something like 11 points in the brief, but those are the two biggest when you think? I believe so. If there are other questions I can answer, I'm happy to. Go ahead. I was just thinking your prosecutorial misconduct claim, you kind of try to bootstrap this additionally with these two witnesses, people who were interviewed, that because you threw up right after the crime that that shows remorse and that makes it false to argue there was no remorse. That seemed tough to me. It wasn't just the fact that he vomited, he was also asking if God would forgive him, he was crying excessively. And that makes it false to argue no remorse, you know, what are we, a year or two down the road that, I mean, usually to make an argument false, a fact can be false, to make an argument false has got to be a lot more than that usually, doesn't it? I suppose if he had said, yeah, maybe he threw up a little remorse, but he sure got over it mighty quick, then that would have been not false? Well, at a minimum, I think it was misleading conduct for the prosecutor to proceed in that manner. All right, very well. You'll have your rebuttal. Thank you, Your Honor. We'll hear from Mr. Willie. May it please the court, Assistant Attorney General Charles Willie, arguing on behalf of the warden. Your Honor, in this case, as in all habeas corpus cases, there is an issue as to whether the state court was objectively reasonable in adjudicating the claim presented to it. But this case also presents a unique jurisdictional question. The question being, can Rule 59 be used as a vehicle to obtain reconsideration of a district court's decision with respect to the denial of a certificate of appealability? Now that rises to the level of a jurisdictional question, because if, indeed, a Rule 59 motion is not a genuine Rule 59 motion, then it will not toll the 30-day jurisdictional time for filing a notice of appeal. Now, here in this case, if one looks at the structure of the habeas corpus rules, as well as the historic purposes of Rule 59, one can see that seeking reconsideration for a certificate of appealability is not a proper question for Rule 59. Now, counsel for petitioner argues that the warden is relying on a single case. Actually, we would dispute that, Your Honors. We point to a very recent case, the Bannister case, in which the Supreme Court, in holding that Rule 59 is not considered to be a second petition, nevertheless discussed in detail what a Rule 59 motion really is. And it is well established that a Rule 59 motion does, indeed, address the merits of a claim. And also, it is well established, the Supreme Court has held, that a determination for a certificate of appealability is not a merits determination. It is a threshold question that must be answered, indeed, with respect to whether a court of appeals has jurisdiction, but is not a merits determination. Now this is reflected also in the habeas corpus rules themselves. The habeas corpus Rule 11 specifically provides that a request to reconsider the denial of certificate of appealability does not toll the time for filing a notice of appeal. Now that makes sense because the overall structure of the habeas corpus rules for the conduct of 2254 proceedings in the district court expressly provides that a motion to reconsider the denial of a certificate of appealability does not toll the time for appeal. Now this makes a lot of sense because in no way does the certificate of appealability determination address the merits in the sense that the decision that one seeks to amend calls into question the judgment. After all, Rule 59 provides for a motion to alter and amend a judgment. The certificate of appealability is a threshold question. It is not the judgment itself. And as a matter of fact, this court has held that the denial of a certificate of appealability is not an appealable order. It concerns the merits in a sense. Yes, it does concern the merits, but in one important aspect. When you talk about, in the context of the habeas procedures, when you talk about concerning the merits, you are talking concerning the merits as it may affect the judgment. And the denial of the certificate of appealability has nothing to do, does not affect the judgment. The habeas corpus application, the judgment stands. It is denied. Okay, so how do we know that Rule 11 of the 2254 rules does not simply set forth a claims processing rule as opposed to a jurisdictional rule? We know this, but first we know, Your Honor, that it specifically references, those rules specifically reference the appellate rules. I mean, the criminal rules and the appellate rules have many deadlines. For example, deadlines relating to sentencing proceedings, to giving the defendant notice of intent to enter a forfeiture order is a case that I had. And like in that case, those deadlines were blown, but the Supreme Court has made a very rules on the one hand, which can be forfeited, violations of which can be forfeited as a basis for changing something on appeal, as opposed to jurisdictional ones which are not subject to forfeiture. And so, since many deadlines in rules are claims processing rules as opposed to jurisdictional requirements, I was wondering why should we construe 2254 to be jurisdictional as opposed to claims processing? Your Honor, the Supreme Court has held that the 30 day time limit for filing an appeal is a jurisdictional rule. That's true. And also, they've also held that in a particular case where the district court itself misconstrued the time for which that 30 day period can be extended, that was nevertheless, the court held that the failure to comply with the 30 day rule was jurisdictional and not subject to any exception. What case was that again, do you recall? It was like one of those Bowles cases. It sounds like Bowles v. Russell, but it wasn't the 30 day rule. It was a 14 day rule and the judge gave them 17 days. It ultimately ended with the appeal being filed untimely. Right. Ultimately. Bowles v. Russell. See, this is, I mean. This happens, I wrote it. You've got a photographic memory. No, it's because I wrote it. Okay. I apologize for not, it was all I could do. It was filed five to four, so. All right, well. He still has a photograph. Some are more memorable than others. In essence then, this is, I mean, and also you have the final general provision which also was highlighted in Bannister, that where the habeas corpus rules conflict with the rules of civil procedure, the habeas corpus rules govern. So if in any sense rule 59 could be construed to allow this, because the habeas rule 11 specifically covers this situation, then habeas rule 11 would be the rule that must be followed. And rule 59 could not be construed in such a way as it would conflict with rule 11. Now Petitioner says that, he recognized this, but he made somewhat of an exception argument. He said, well, I really wasn't asking for reconsideration of a denial of a certificate of appealability on my particular claim. I was simply asking for the court to do that in the first place, because the court neglected to make that assessment. And we would submit that reconsideration does not simply include a court changing its mind as to what it rules. Reconsideration also includes an argument that the court has neglected to assess or reconsideration. So we would submit that there is no exception, as the Petitioner argues, in habeas rule 11. What about the fact that rule 11 says must, the district court must, does that change anything? No, your honor, because that, now there would be, you might say, a claim processing rule. Because that wouldn't, if the district court failed to comply with must make that determination, it wouldn't affect the judgment. It would be, it perhaps would mandate that perhaps the Court of Appeals hold the case until the district judge does make the determination. But I don't recall anything in the rules saying, so what you're saying is the Court of Appeals would then have to hold it and let the district judge, which we've done. But I don't recall anything in the rules saying like after 20 days it expires. In other words, then it's just considered a denial. That's, your honor, that would, a couple of things to focus in on. When you, normally you have a situation where the practice would be to file your Notice of Appeal. I mean, you file your Notice of Appeal and then you preserve the jurisdiction of the appellate court. And then the appellate court could determine either to assess the Certificate of Appealability question itself, which it can do, and it does, and must do if asked, or could simply hold on to the case and direct the district court to assess the Certificate of Appealability. But in either case, you're not delaying the appeal. And that's the warden's primary interest in this issue, is that one could see that if Rule 59 becomes a routine practice where habeas corpus, capital habeas corpus petitioners routinely file Rule 59 motions to obtain reconsideration of denials of Certificate of Appealability on a particular claim, then you have the potential for, you have the potential for more delay that would be inconsistent with the whole structure of the habeas corpus statutes and rule. I mean, the rules here in the statute, they contemplate that yes, there will be a Notice of Appeal if the district court issues a Certificate of Appealability, fine, but the Court of Appeals can ask to expand that. It all contemplates this orderly process where the Certificate of Appealability issue is not going to delay indefinitely or delay without good cause the adjudication, the ultimate appellate adjudication of the claims. So here, just to nail down the timeline that you think is relevant to this argument, the district court enters its judgment on a particular date, right? Yes. Did that judgment encompass its orders regarding COAs? To a certain extent, yes. What happened here, Your Honor, this is a peculiar case because the district court assesses some claims, denies some claims, doesn't address the Certificate of Appealability, later on then considers more claims, denies those, and then issues a Certificate of Appealability, but does not address the question petitioners had requested to amend the petition, again to include lethal injection claims. The district judge did not consider that. That prompts the petitioner to file a Rule 59. By filing a Rule 59, I mean, as I recall, the district court, kind of like sui sponte after some decision by our court, I think, says, I'm not going to let you proceed with the method of execution claim. Yes. That was in a 2254. Yes. And so did the court then enter judgment, formally enter judgment? The court ultimately formally entered judgment that the petition and all claims were denied. Also, the court had previously stated that the amendment to the petition, there would be no amendment permitted to assert claims of lethal injection. Again, it was a rather convoluted and kind of confusing process, but ultimately the court did come down with a judgment which the petitioner believed was sufficiently final to file a Rule 59 motion to seek to alter and amend judgment. Okay. And so, and then meanwhile, the petitioner does not file a Notice of Appeal. That's right. Period for that, in your view, passes. That's right. Before the district court rules on the putative Rule 59. Yes. That is correct, Your Honor. And at that point, they file a Notice of Appeal. Yes. That is correct. You want to talk about the merits? Yes. Yes. Can I ask you, I'll direct you right there, can you, one of your friends on the other side's points that's somewhat compelling is there's, here's what he said, there's no dispute there was an aggravated robbery, there's no dispute that there was a murder. It's incumbent upon you to find that it was a purposeful murder in the convention of an aggravated robbery. Right? Right. Why isn't that problematic? I mean, he's basically saying, you can find he intentionally killed someone. Your Honor, I guess I would fall back on the very, very well-worn path that is incorporated in jury instructions that we're all familiar with, is that you assess intent by action and no one can read anybody else's mind. And here, the intent can be assessed by... But your last point that no one can read anyone else's mind is the reason defense counsel, why are they conceding intent? Actually, the warden would dispute that, Your Honor. I think a fair... The warden would dispute what? That they conceded that their client purposely killed the victim. A fair reading of the presentation of the defense overall would be that the defense was saying this, there's a strong case here for the prosecutor. Our client confessed on tape. But nevertheless, the government still has to prove every element of the crime. When he says the words Judge Lepar just read, if I remember them correctly, where he says, you must find X, did he mean you must find it, that is, I agree that you will find it, or that you must find X in order to convict, which would be the instructions that a judge would give? Are you making that... In context, I would submit, if you look at the overall context of what the defense did and what they argued, they were putting, they were conveying to the jury that we understand that there's a strong case here for the government, but nevertheless, you still must make the government prove every element and the only element that anybody could even suggest might be in contest would be Mr. Ragland's intent. But he does say things like, you know, this case is probably going to a penalty phase. I mean, he does say, like, some very defeatist type stuff that, you know, I mean, most jurors would say, well, he must think, you know, his case is at least really weak on this point. I mean, isn't that prejudicial? We would submit no, Your Honor, because in capital... That's a dilemma that many defense attorneys face in capital cases. And the dilemma is, how strong do I argue to the jury that my client is innocent or my client, they can't really prove his guilt. But they don't have to, he doesn't have to argue innocent. As your friend pointed out, I thought it was a thoughtful point. He could have conceded there was a murder. I mean, that was obvious, right? Okay, my guy murdered him, but he didn't mean to kill him. He didn't have the intent to kill him. The plan all along was to rob him. And so he doesn't have to say, I mean, imply what he's saying. And I would think that that's our problem. Our main point of contention is that why we still dispute that because we submit that under the context of everything that occurred, all the arguments of counsel and the way that counsel approached the case, that they weren't conceding that their client intent-purposely shot the victim. What they were conceding was the state had some pretty powerful evidence that he did. And that's what they were doing. And that, of course, is fully supported by the evidence itself. I mean, the confession, the taped confession, it's no exaggeration to say that that taped confession was a devastating confession. I mean, more so than just, I confessed to doing the crime. It was a devastating confession. Now, with respect to... In that respect, what stands out is the overwhelming, compelling circumstances that were pointed out by the Ohio Supreme Court. I mean, here you have a situation in terms of, you have evidence that, oh, he says, oh, we're going out to rob somebody, you know, we're going out there to rob somebody and we're going to do a dope boy, but now that might be a little dangerous because dope boys might have guns. You know, suggesting that they were looking for perhaps a victim that would be more helpless. That's always true. I mean, if he's conceding robbery there, he's not conceding he intentionally killed someone. Yes, but also, he brings a weapon with him. That's another circumstance. He brings a weapon with him. That doesn't mean intent to kill. I mean, people have weapons all the time. Yes, people, that's true, people, you're right, you're right, people bring weapons to commit robberies, but also then when the victim is totally compliant, doesn't do... And there again, I would like to go back just a little bit about how, you know, the idea of intent and how we look at people's actions. One of the points that the Ohio Supreme Court was making, I think, is that when we think of involuntary manslaughter, when we think of a non-purposeful killing or shooting, we're thinking in terms of other things that go on, which show you that the person may not have had, may not have had the purpose. Like, for example, the victim does something to provoke or perhaps, you know, cause the person with the gun to react in a way that was not purposeful. Like a misunderstanding. A misunderstanding, or... Or you hit somebody with your car. Right, or in this situation, and that's why I believe that the defense or the petitioner now is focusing on the idea, ironically, of, oh, the gun, the gun was a hair trigger, you know, the gun might have gone off accidentally because it had a hair trigger. That, of course, is something which would be objective evidence that the person did not purposely kill the victim. If it could be shown that I took a gun to a robbery but the gun had a hair trigger and it went off, it's plausible that I could say that's objective evidence of a lack of purpose to kill. That's the kind of thing you look for, and as the Ohio Supreme Court found, there wasn't anything like that in this case. There was nothing, no objective indicia that this was anything other than a person who pointed a gun at his robbery victim and shot him in a way that would most assuredly be fatal. So he does say in opening statement that he panicked and the gun went off, right?  Oh, he said it in his confession. Yeah, I believe he said that in his confession. He mentioned that he panicked. But then again... At some point did he not say that he didn't know what part of the body he shot him in? Yes, he said he didn't know where he shot him. But he also said in the same confession, I really didn't need to shoot that man. I'm sorry? He said, I really didn't need to kill that man. I really didn't need to kill him. He also said that in his confession, too. So, the law... And of course, if we go back to... Look at Beck, for example. Let's look at the Beck claim. It's well established that arrester-included offense instruction is normally required by the Constitution, the Eighth Amendment, if under state law, the arrester-included offense is available. In Ohio, it has been the law for many, many years that arrester-included offense instruction is not required unless both the evidence from which the person could reasonably be found not guilty of the major offense and guilty of the lesser offense. And that is a significant aspect of state law. Because if you could take it then, it's understandable where a court would say, or a trial judge would say, oh, under the evidence here, there is no way that Raglin could have been acquitted and or found guilty of any kind of a lesser offense or involuntary manslaughter. So, if the jury hears that he panicked, that, according to him, he didn't intend to kill Fannie and that he didn't know what part of his body he shot, the jury, nonetheless, no reasonable jury could find that the killing was not purposeful. Every reasonable jury would find it was purposeful, notwithstanding those things? Yes, and to add the ADPA standard, I suppose I would emphasize that that's a reasonable conclusion, that the Ohio Supreme Court was reasonable in making that assessment. I mean, if you really cut it to the finest of points, perhaps it might have been plausible. Maybe it was plausible. Well, I'll put it this way. It wasn't impossible that a person could have done that, his actions, as the evidence depicted. It wouldn't have been impossible that he might not have had the intent to kill Mr. Bainey. But it's certainly a reasonable determination that that's not likely, that a jury would not have thought that was a possibility, a reasonable possibility. In terms also of the procedural default, it's interesting here that the district court found that although Mr. Raglin asserted that his appellate counsel was ineffective for not presenting several arguments, Mr. Raglin never argued at the district court that any of those particular claims that were not raised were stronger than the claims that were presented. He didn't make that argument. Rather, he made the argument that no, an attorney has an obligation in a capital case to raise all issues of conceivable merit. That is simply not the law. Recently, the Supreme Court of the United States in the De'Vea versus Smith held that the narrow exception for the Trevino rule, the narrow exception did not apply to appellate ineffectiveness claims. And in that case, Justice Thomas explicitly applied the Smith versus Robbins case and said that an appellate attorney is not required to raise every claim. He went on to say that where an appellate attorney does not raise a claim that was not properly preserved at the court below, then in almost all circumstances, the appellate attorney cannot be deemed ineffective. And that makes a lot of sense, because when you think about it, if an issue is not preserved, what is an obstacle? Just about in every appellate court in the United States, an obstacle to appeal is failing to provide the trial lower court with the opportunity to correct the error. And so that, in essence, would make it very difficult for an appellate attorney to succeed on a claim that was not properly presented below. Now, admittedly, he's saying here that his trial attorney, that can be excused, because his trial attorney was ineffective. But I would submit, Your Honors, that it's not enough to simply convert something, convert an issue that was not properly presented below. It's apparent on the record, it's not simply enough to get around that problem by simply saying, well, my trial attorney was ineffective, because he should have preserved that issue. So here, the Beck claim is preserved. The ineffective assistance claim based on the putative concessions is not preserved. That's right. And so to sort of play out the line of analysis you're suggesting, and that you say Justice Thomas is suggesting, if the appellate lawyer does try to raise the claim that trial counsel was ineffective for sort of conceding the purposeful element, I mean, you're the expert on state law. What would the Ohio courts have done with that procedurally? Procedurally? Would they have just gone to the merits, or would there be some hoops? Procedurally, it is. Indeed, it's required in Ohio procedurally to raise on direct appeal. If you have a new lawyer on appeal, it's required to raise any claims that ineffective assistance of trial counsel apparent on the record on direct appeal. So that is a requirement in Ohio. Did he have different appellate counsel than his trial counsel? Yes, he did. Now, it is true that the Ohio Supreme Court very often, as your honors are aware, there is a shortcut that can be done here when you have such a claim. Sometimes it's easier for the appellate court simply to say, well, trial counsel was not ineffective for not raising a claim because the claim itself had no merit. So I mean, that's a shortcut. And typically, the Ohio Supreme Court... So they can do that as a discretionary matter. Yes. But what is the... I assume there's a procedural bar here. Oh, yes. And what is it? Well, the procedural bar is the failure to raise... They failed to raise the claim of ineffective assistance of trial counsel on direct appeal. And that is why they have resorted to... Right, but what would the Ohio Supreme Court have said about this claim in a direct appeal had it been raised? I would... And let's say they don't do a shortcut thing. I would say that they would hold that there were reasons why the counsel... There were reasons why the counsel did not raise the claim. Okay, that's not what I'm getting at. What I'm getting at is, under Ohio law, is there something that looks like an adequate and independent state procedural ground that would have been an obstacle that would have, in turn, deterred a reasonable appellate lawyer from even raising this claim? It would have been... A reasonable appellate attorney might have felt that Ohio's contemporaneous objection rule would be a barrier because what you're saying, he recognizes that in Ohio, if a claim is not raised... If there's not a contemporaneous objection raised at trial, that's an independent and adequate state ground for not giving... Yeah, but it's an awkward fit here because the lawyer himself... Let's say he's just incompetent and he's making a mistake. He's not going to object because he doesn't know any better. I guess what I'm struggling to see is what procedural basis would the Ohio Supreme Court invoke on direct appeal with a different lawyer and say, no, we're not going to consider the merits of that? I'd like to clarify that. I want to make sure to clarify. Had this been raised on appeal as a claim of ineffective assistance at trial counsel, the Ohio Supreme Court would have considered it. They would not have found it to be barred. They would have considered it. Justice Thomas' point about if the claim isn't preserved for appeal, it's sort of almost a certainty that the failure to raise it in that appeal is not IAC. That point would then be inapposite here. Because, I mean, Justice Thomas is assuming, I'm sure, that there's a procedural bar to the claim and you're saying there isn't. I think it's appropriate in this sense, your honor, in this sense, that the standard for ineffective assistance of counsel is far higher to meet than the standard to show a claim. So, a reasonable appellate attorney could say, look, I could raise this as a claim of ineffective assistance to trial counsel, but am I going to be able to convince the appellate court the reasonable probability of a different result had the attorney not made that mistake. And that's an added barrier. That would be an added barrier why a reasonable appellate attorney would... The bottom line would be appellate attorneys are looking for the cleanest, smoothest issues that do not have other obstacles towards relief. Alright, well, the red light's on. Any further questions from either of the other judges? Thank you, your honor. We just ask that you affirm the judgment of the district court. Thank you for your ear of rebuttal. Thank you, your honor. Beginning with the jurisdictional issues, there was no denial of a certificate of appealability in the district court. The district court granted a certificate of appealability and failed to specify whether or not it encompassed the method of execution claims. That's not something that would violate Rule 11 and the prohibition on it. But what he's saying is you filed your notice of appeal too late. Right. What he's saying is that the notice of appeal was filed late because the motion to alter amend judgment amounted to a motion for reconsideration that would be barred under Rule 11 as far as tolling the limitations period for appealing goes. Did you file that motion? I mean, was it styled as a Rule 59 motion? Yes, your honor. Okay, I mean, so the defense chooses to file a motion styled as a Rule 59 motion. Rule 11, meanwhile, says Rule 59 motions do not toll the time to file a notice of appeal in Habea 2254 cases. What it says is that a motion for reconsideration of a denial of a certificate of appealability doesn't toll the time for appealing. Rule 11 does not refer expressly to Rule 59. It just refers to motions for reconsideration of denial. I believe that's correct, your honor. Okay. And then, of course, the court is free to revisit jurisdictional issues at any time. I'd just point out the court already rejected those arguments when this issue was previously litigated when the case was appealed. That was like an order. Go ahead. No, I was just going to ask one question. So, in B, it says and this, I think what Judge Kethledge was getting at, but maybe I'm misunderstanding. A timely notice of appeal must be filed even if the district court issues a certificate of appealability. District court issued a certificate of appealability, right? Yes, your honor. So, I don't understand. Then why is your notice of appeal timely? Because we filed a Rule 59 motion that tolls the time for appealing under Rule 4, I believe. And then filed a timely notice of appeal after that was ruled on. Okay. Alright. And so, I see. Rule 4 will toll it and that's where you're relying on. Okay. Go ahead. I'm sorry. Okay. There was some discussion of whether or not trial counsel had actually conceded whether Mr. Raglin acted purposefully. They said unambiguously in opening arguments there's no dispute there was a murder. Under Ohio law at the time, there can't be a murder. Judge Boggs pointed something out that I have missed before that I think is a nice point, which is he says it will be incumbent upon you to find that it is a purposeful murder in the commission of the aggravated robbery. Then he says something like, listen closely, he was drunk, he was on drugs, and then he says later on that they will hear about a robbery to get money. That was the sole purpose. There was no plan to murder anyone. And he says, during this transaction, Mr. Bainey had either been or was getting back up as if to reach for one of the bags at which point Walter panicked and the gun went off. So he's clearly saying, and I think somewhere he says in effect he didn't have the intent, in essence what you're saying, and so if this sentence is read as Judge Boggs read it and pointed out and I could read it that way it will be incumbent upon you to find, and then the next thing he says is you have to listen carefully because there's all this other stuff. Certainly they did make statements about putting the state, making sure the state meets its burden, but that's after they repeatedly told the jury that the case was in all likelihood going to the mitigation phase. But they didn't say that, they said there may be two phases or something to that effect, right? What was it? I can't find it now. Did they use the words in all likelihood? At some point in voir dire I believe that exact phrase. Oh, not in opening, in voir dire. In opening they did say that the case was likely to proceed to mitigation. I can't remember the exact phrase. Okay, I can't either. I know they said something about two trials, but I don't, yeah. Okay. What they said was that it was the first of presumably two trials. That sounds right. But I do think they were also saying listen carefully, this looks like an open and shut case, but it's really not. He was drunk, he was on drugs, he didn't intend to kill, he was trying to rob. They still made those statements after repeatedly telling the jury that the case in all likelihood was going to the members of the veneer. I mean, at the very beginning they told the entire veneer that the case was in all likelihood going to mitigation. Your honor, my time has expired. You can wind up if you want. I guess all I'd have to say is ask for the judgment of the district court to be reversed. Very well. No further questions? Alright, thank you both for your arguments today and in your briefs. The case really was notably well argued and briefed by counsel in both cases. Thank you. You may adjourn court. Case to be submitted. This honorable court is now adjourned. Thank you.